```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE MIDDLE DISTRICT OF GEORGIA
                       COLUMBUS DIVISION

ROBERT F. COOPER, AMALIZZ        *
MATHEWS, WHITNEY DOWDELL,
LAKIESHA GOODINE, and KIRA       *
SYKES,
                                 *
     Plaintiffs,
                                 *
vs.                                    CASE NO. 4:17-CV-116 (CDL)
                                 *
PARKER PROMOTIONS, INC., d/b/a
Club Fetish, and NICHOLAS        *
PARKER,
                                 *
     Defendants.
                                 *
```

O R D E R

Defendants operate an adult establishment called Club Fetish. Plaintiffs worked at the club. They filed this action pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), seeking to recover unpaid minimum and overtime wages from Defendants for the years 2014 to 2017. Presently pending before the Court are the parties' motions for summary judgment. For the reasons set forth below, these motions (ECF Nos. 49 & 50) are granted in part and denied in part.

SUMMARY JUDGMENT STANDARD

Summary judgment may be granted only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a *genuine* dispute of *material*

fact exists to defeat a motion for summary judgment, the evidence is viewed in the light most favorable to the party opposing summary judgment, drawing all justifiable inferences in the opposing party's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A fact is *material* if it is relevant or necessary to the outcome of the suit. *Id.* at 248. A factual dispute is *genuine* if the evidence would allow a reasonable jury to return a verdict for the nonmoving party. *Id.*

## DISCUSSION

Preliminarily, the Court notes that the parties agree on the following three issues: (1) that Plaintiffs who were dancers were not exempt "creative professionals" under the FLSA (assuming that Plaintiffs were covered employees); (2) that Defendants are not entitled to any setoff of unpaid wage liability; and (3) that Defendants are entitled to summary judgment on Plaintiff Goodine's overtime claim. Accordingly, summary judgment is granted in favor of Plaintiffs on issues (1) and (2) and in favor of Defendants on issue (3). The Court addresses the motions for summary judgment regarding the other issues in the remainder of this Order.

The FLSA requires that an "employee" who is "engaged in commerce" or "is employed in an enterprise engaged in commerce" must be paid by her "employer" a minimum hourly wage and a wage of one-and-a-half times her regular rate for each hour that she works in excess of forty hours per week. 29 U.S.C. §§ 206(a), 207(a)(1).

2

To recover unpaid wages under the FLSA, an individual must prove that she is an "employee" who "is covered by the Act" and that her "employer" did not pay the required wages. *Collar v. Abalux*, Inc., 895 F.3d 1278, 1281 (11th Cir. 2018). The statute of limitations for non-willful FLSA violations is two years, and the statute of limitations for willful FLSA violations is three years. 29 U.S.C. § 255(a). Even if an employer violates the FLSA by failing to pay covered employers required minimum and overtime wages, the employer may reduce its liability by establishing a "good faith" affirmative defense. *See* 29 U.S.C. § 260.

Defendants argue that Plaintiffs were not covered by the FLSA for 2014, 2015, and 2016—meaning Plaintiffs were not "engaged in commerce" or "employed in an enterprise engaged in commerce"—and Defendants seek summary judgment on this basis. In addition, all parties seek summary judgment on the following two issues: (1) whether Plaintiffs were "employees" under the FLSA (and not independent contractors); and (2) whether Nicholas Parker, as the owner of Parker Promotions, Inc., was Plaintiffs' "employer" within the meaning of the FLSA. Defendants alone seek summary judgment on Plaintiffs' claim that the alleged FLSA violations were willful. And Plaintiffs alone seek summary judgment on Defendants' good faith affirmative defense.

**I.  Were Plaintiffs Covered by the FLSA for 2014 to 2016?**

To be covered by the FLSA, an employee must be "engaged in commerce" or "employed in an enterprise engaged in commerce." 29 U.S.C. §§ 206(a), 207(a)(1).  Thus, the FLSA "provides two types of coverage: individual and enterprise." *Collar*, 895 F.3d at 1281. Plaintiffs Dowdell, Goodine, Mathews, and Sykes worked as dancers ("Dancer Plaintiffs").  They rely on both individual and enterprise coverage.  Plaintiff Cooper, who worked as a security guard, relies only on enterprise coverage.  Defendants do not dispute that there is at least a genuine fact dispute as to whether enterprise coverage existed for 2017.  But Defendants seek summary judgment on this issue for 2014, 2015, and 2016, arguing that there was no enterprise coverage for those years.  As discussed below, viewing the evidence in the light most favorable to Plaintiffs, the non-moving parties on this issue, genuine fact disputes exist on whether there was enterprise coverage for all the relevant years (2014 to 2017).  The Court finds it unnecessary to address whether individual coverage also existed.

Enterprise coverage requires proof that Parker Promotions "has employees who, among other things, are 'engaged in commerce' as well as proof that [Parker Promotions] 'is an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated).'" *Collar*, 895 F.3d at 1281 (quoting

4

29 U.S.C. § 203(s)(1)(A)). Defendants do not dispute that some of Club Fetish's employees engaged in commerce by serving alcohol. Defendants, however, assert that the club's annual gross sales did not exceed $500,000 for 2014, 2015, and 2016.

"Annual gross sales 'consist[] of [the] gross receipts from all types of sales made and business done during a 12-month period.'" *Id.* (alterations in original) (quoting 29 C.F.R. § 779.259(a)). "To determine the amount of annual gross sales, the employer is required to use the same annual accounting method, based on either a calendar year or a fiscal year." *Id.* In this case, Defendants' bookkeeper calculated annual gross sales for Club Fetish based on a calendar year. Defendants' bookkeeper calculated that the annual revenue for Parker Promotions in 2014 was $302,557.00, and that is the amount of gross sales or receipts reported to the Internal Revenue Service ("IRS"). Parker Dep. Pl.'s Ex. 49, 2014 Form 1120S, ECF No. 49-12 at 2. Defendants' bookkeeper calculated that the annual revenue for Parker Promotions in 2015 was $268,577.00, and that is the amount of gross sales or receipts reported to the IRS. *Id.*, 2015 Form 1120S, ECF No. 49-12 at 13. Defendants' bookkeeper calculated that the annual revenue for Parker Promotions in 2016 was $214,263.00, and that is the amount of gross sales or receipts reported to the IRS. *Id.*, 2016 Form 1120S, ECF No. 49-12 at 21.

Plaintiffs pointed to evidence that these revenues are based on beverage sales but do not include door entry fees for the club. Hanson Dep. vol. 2, 84:10-22, ECF No. 49-10. The club used "nightly sheets" to keep track of revenue from its cash registers and door fees. Using the nightly sheets that Defendants provided for 2016 and 2017, Plaintiffs calculated that the club's revenue from these sources was $421,584.00 in 2016 and $971,049.00 in 2017.[1] Sorrenti Decl. ¶¶ 21-22, ECF No. 51-4; Sorrenti Decl. Attach. E, ECF No. 51-4 at 26-44.

Plaintiffs also pointed to evidence that the amounts Parker Promotions reported to the IRS do not include "moneys that dancers [paid] out to the club." Oakes Dep. 61:11-13, ECF No. 49-11. Dancers made mandatory payouts to the club for house fees, security personnel, and DJs. Mathews Dep. 76:13-16, ECF No. 50-15 ("It's mandatory to tip the DJ, the bar, and the security. If you do not tip these people, you don't have a job. If you don't pay a house fee, you can't work."). First, each dancer paid house fees of at least $10 per shift, and the house fee was based on when each dancer was "ready to work." Hanson Dep. Ex. 25, ECF No. 55-2; Hanson Dep. vol. 1, 42:1-43:16, ECF No. 49-9 (stating that Exhibit 25 accurately reflected Club Fetish's house fee policy for the

---

[1] Defendants did not produce any nightly sheets for 2014, and they only produced nightly sheets for November and December of 2015. Sorrenti Decl. ¶ 3.

6

relevant time period). If a dancer began working at 7:00 p.m., the house fee was $10. Hanson Dep. Ex. 25. If a dancer began working at 8:00 p.m., the house fee was $20. *Id.* If a dancer began working at 9:00 p.m. the house fee was $30. *Id.*; Mathews Dep. 68:8-12 (stating that the house fee for dancers who arrive just before 9:00 is $30 but that they pay $10 extra if they arrive late). Second, dancers were required to pay $2 for each security guard per shift. Goodine Dep. 37:7-11, ECF No. 50-14; *accord* Mathews Dep. 76:13-16 (stating that tips to security were mandatory). Third, dancers were required to pay at least $10 per shift for the DJ. Mathews Dep. 69:23-70:2; 76:13-16.

Plaintiffs reviewed Club Fetish's dancer schedules, staff schedules, and nightly sheets for 2017 to calculate approximately how much the dancers paid to the club and its personnel in mandatory fees during that year. Defendants object to this evidence, arguing that Plaintiffs did not provide support for the calculations, which are summarized in the declaration of Jessica Sorrenti and based on exhibits attached to that declaration. The calculations are not unsupported, and they are not complicated. First, Plaintiffs looked at the nightly sheets and staff schedules provided by Defendants to count how many security guards worked each night. Sorrenti Decl. ¶ 13. Second, Plaintiffs looked at the dancer schedules provided by Defendants to count how many dancers worked each night and what time they arrived. *Id.* ¶ 18.

7

Based on that information, Plaintiffs calculated the amounts paid to security guards each night by multiplying the number of security guards on duty by the number of dancers on duty, then multiplying that number by $2. *See generally* Sorrenti Decl. Attach. D. Plaintiffs calculated the amount of DJ fees by multiplying the number of dancers on duty each night by $10. *See generally id.* And, Plaintiffs calculated the amount of house fees by adding together (1) number of dancers who arrived by 7:00 p.m. times $10, (2) number of dancers who arrived between 7:00 p.m. and 8:00 p.m. times $20, and (3) number of dancers who arrived after 8:00 p.m. times $30. *See generally id.* Plaintiffs then added all of the figures together to determine the total amount of mandatory fees Club Fetish dancers paid during 2017: more than $125,000. *See* Sorrenti Decl. Attach. D at 11.

Though Plaintiffs completed these calculations for 2017, they did not complete them for prior years. That is because Defendants only produced dancer and staff schedules for 2017. Sorrenti Decl. ¶¶ 4-5. Thus, based on Defendants' failure to maintain and/or produce these records, Plaintiffs did not have all of the necessary information to complete the calculations for 2014, 2015, and 2016. Plaintiffs argue that the Court may find a genuine fact dispute by extrapolating the 2017 data. Defendants argue that such extrapolation would be inappropriate because after mid-2017, sales at Club Fetish increased by "at least 65 percent." Hanson Dep.

8

vol. 2, 51:8-15. But business did not change significantly between 2014 and mid-2017. *Id.* at 51:21-52:2. During the first six months of 2017, the mandatory fees added up to at least $39,500.[2] *See* Sorrenti Decl. Attach. D at 1-6. From this evidence, a jury could conclude that the dancers paid the club and its personnel at least $79,000 per year in mandatory fees. So, a jury could conclude that during 2016, the annual revenue for Club Fetish was $500,584 ($421,584 plus $79,000). And, based on Defendants' representation that business did not change significantly between 2014 and mid-2017, a jury could conclude that the annual revenue for 2014 and 2015 was also at least $500,000. For these reasons, there is a genuine fact dispute on whether enterprise coverage existed for 2014 to 2017, and Defendants are not entitled to summary judgment on this issue.[3]

---

[2] Defendants did not produce dancer schedules for thirteen dates—including eight weekend dates—during the first half of 2017, so this number does not include mandatory fees that were paid on those dates. Sorrenti Decl. ¶ 4. However, the present record suggests that the club was open on those dates and had several security guards on duty, which means that a jury could conclude that the mandatory fees paid during the first half of 2017 added up to more than $39,500. *See generally* Sorrenti Decl. Attach. D at 5-7 (listing number of security guards on duty but no dancers and thus no fee calculation for thirteen dates).

[3] This conclusion does not take into account Plaintiffs' argument that the Court should calculate annual gross sales based on how much Defendants underreported their 2017 revenue to the IRS, and it does not take into account Plaintiffs' argument that the Court should consider evidence regarding the operations of Club Dream, another club owned by Nicholas Parker.

9

**II.   Were Plaintiffs "Employees"?**

Only "employees" are entitled to minimum wage and overtime pay under the FLSA.  Independent contractors are not.  It is undisputed that Defendants categorized all of the Plaintiffs as independent contractors and did not pay them minimum wage or overtime.  Plaintiffs contend that they should have been categorized as employees, as a matter of law, for the entire period between 2014 and 2017.  Defendants, on the other hand, assert that the Dancer Plaintiffs were correctly categorized as independent contractors, as a matter of law, for the entire relevant timeframe.

"To determine whether an individual falls into the category of covered 'employee' or exempted 'independent contractor,' courts look to the 'economic reality' of the relationship between the alleged employee and alleged employer and whether that relationship demonstrates dependence." *Scantland v. Jeffry Knight, Inc.*, 721 F.3d 1308, 1311 (11th Cir. 2013).  "This inquiry is not governed by the 'label' put on the relationship by the parties or the contract controlling that relationship, but rather focuses on whether 'the work done, in its essence, follows the usual path of an employee.'" *Id.* (quoting *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947)).

The courts consider six main factors in determining the economic reality of the parties.  Those factors are:

>    (1) the nature and degree of the alleged employer's control as to the manner in which the work is to be performed;
>
>    (2) the alleged employee's opportunity for profit or loss depending upon [her] managerial skill;
>
>    (3) the alleged employee's investment in equipment or materials required for [her] task, or [her] employment of workers;
>
>    (4) whether the service rendered requires a special skill;
>
>    (5) the degree of permanency and duration of the working relationship;
>
>    (6) the extent to which the service rendered is an integral part of the alleged employer's business.

*Id.* at 1312.

Based on the present record, genuine fact disputes preclude summary judgment on whether the Dancer Plaintiffs were employees or independent contractors. Notably, there is a genuine fact dispute on how much control Club Fetish and its managers exercised over the Dancer Plaintiffs, in large part because there is evidence that the club's rules were significantly relaxed over time. A reasonable jury could conclude based on the evidence viewed in the light most favorable to Plaintiffs that the Dancer Plaintiffs were economically dependent on Club Fetish and thus "employees" for all or some of the relevant time. But a reasonable jury could also conclude based on the evidence viewed in the light most favorable to Defendants that the Dancer Plaintiffs were in business for themselves and thus were not "employees" for some or all of the

11

relevant time. It all depends on whose version of the facts the jury credits. Therefore, neither side is entitled to summary judgment on the employee/independent contractor status of the Dancer Plaintiffs, and both motions are denied on that issue.

Defendants did not seek summary judgment on Cooper's contention that he is an "employee," and they did not respond to the merits of Cooper's summary judgment motion on this issue or point to evidence to create a genuine fact dispute. Defendants do not appear to deny that the economic reality factors weigh in favor of finding that Cooper was an employee rather than an independent contractor. Therefore, the Court grants Cooper's summary judgment motion on this ground . Accordingly, if the jury concludes that he was covered by the FLSA, then he has established the "employee" element as a matter of law.[4]

Defendants do argue that the Court should find, as a matter of law, that Cooper cannot establish an overtime claim for any workweek in 2017 because he testified during his deposition that he only worked overtime without pay when he worked with a manager

---

[4] Defendants contend that Plaintiffs' partial summary judgment motion calls for an impermissible advisory opinion because Plaintiffs did not seek summary judgment on the FLSA coverage element of their claims. Federal Rule of Civil Procedure 56(a) permits a party to move for summary judgment on "part of" a claim. Here, Plaintiffs acknowledge that a genuine fact dispute exists on the FLSA coverage issue. They simply ask the Court to decide whether genuine fact disputes exist on other elements of their claims. There is a substantial controversy between the parties on these remaining elements, and the Court is satisfied that it may determine whether genuine fact disputes exist on these elements.

named Mandy Knight. It is undisputed that "Knight left her employment at the club sometime around 2017." Defs.' Statement of Material Facts ¶ 6, ECF No. 49-2. It is not clear from the present record precisely when Knight left her employment at the club, and the Court thus cannot conclude as a matter of law that Knight left her employment before 2017. This is a fact question for the jury, and Defendants are not entitled to summary judgment on this issue.

Defendants also point out that Plaintiffs argue in a footnote of their summary judgment brief that Cooper also worked for Club Dream, that Club Dream and Club Fetish were a single enterprise operated by Defendants, and that Cooper should recover damages in this action for work he performed at Club Dream. Defendants assert that although Plaintiffs have argued that the revenues of Club Dream should be considered in determining whether enterprise coverage exists, Cooper did not disclose until that footnote in his summary judgment brief that he was asserting a *claim* for unpaid overtime at Club Dream. Cooper did not assert such a claim in his Complaint, and, according to Defendants, he did not disclose such a claim in his initial disclosures or in his deposition. Thus, Defendants argue Cooper should not be permitted to pursue an overtime claim in this action based on unpaid overtime at Club Dream. The Court concludes that Cooper's claims at trial should be limited to the claims he clearly disclosed before the close of discovery: claims based on his work at Club Fetish.

13

**III. Is Nicholas Parker an Employer?**

The FLSA broadly defines "employer" to include "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). "A corporate officer is personally liable as an FLSA employer if he has 'operational control of a corporation's covered enterprise,' which may be involvement in the day-to-day operation of the company or direct supervision of the employee at issue." *Moore v. Appliance Direct, Inc.*, 708 F.3d 1233, 1237 (11th Cir. 2013) (quoting *Patel v. Wargo*, 803 F.2d 632, 637–38 (11th Cir. 1986)).

Nicholas Parker is the sole owner of Parker Promotions, which owns Club Fetish. The present record reveals genuine fact disputes regarding the extent of Nicholas Parker's participation in the day-to-day operation of Club Fetish, as well as his role in deciding to classify dancers and security guards as independent contractors rather than employees. Because reasonable jurors could differ on whether Nicholas Parker was an employer, neither side is entitled to summary judgment on this issue.

**IV. The Willfulness and Good Faith Issues**

An employer willfully violates the FLSA if it "either knew that its conduct was prohibited by the statute or showed reckless disregard about whether it was." *Alvarez Perez v. Sanford-Orlando Kennel Club, Inc.*, 515 F.3d 1150, 1163 (11th Cir. 2008). If an employee meets her burden of proving willfulness, then the statute

14

of limitations for unpaid minimum and overtime wages is three years rather than two. *See* 29 U.S.C. § 255(a). If a jury finds that an employer violated the FLSA and assesses compensatory damages, then the district court adds an award of liquidated damages *unless* the employer "shows to the satisfaction of the court" that it acted in good faith and had reasonable grounds for believing its conduct did not violate the FLSA. 29 U.S.C. § 260. "The willfulness or good faith question is answered first by the jury to determine the period of limitations and then, if there is a verdict for the employee, again by the judge to determine whether to award liquidated damages." *Alvarez Perez*, 515 F.3d at 1162. If a jury finds that the employer acted willfully, then the court may not find that the employer acted in good faith. *Id.* at 1166.

Plaintiffs argue that Defendants willfully violated the FLSA. Defendants counter that they acted in good faith in classifying the security guards and dancers, and they argue that Plaintiffs cannot prove willfulness as a matter of law. Plaintiffs, on the other hand, contend that Defendants' good faith affirmative defense fails as a matter of law. The present record is full of genuine fact disputes on these issues. At this stage in the litigation, the Court may not weigh conflicting evidence or make credibility determinations; that is the jury's job. The Court therefore denies the parties' summary judgment motions on the willfulness and good faith issues.

15

CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (ECF No. 49) is granted in part and denied in part. Plaintiffs' motion for summary judgment (ECF No. 50) is granted in part and denied in part. This action shall be set down for trial during the Court's September 2019 trial term.

IT IS SO ORDERED, this 14th day of February, 2019.

S/Clay D. Land<br>
CLAY D. LAND<br>
CHIEF U.S. DISTRICT COURT JUDGE<br>
MIDDLE DISTRICT OF GEORGIA